UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARY ENG,

                                *Plaintiff*,              15-CV-01282-DAB

                 - against -

                                                    PLAINTIFF DEMANDS A JURY

THE CITY OF NEW YORK and
THE NEW YORK CITY POLICE DEPARTMENT,

                                *Defendants*.
---------------------------------------------------------------X

## AMENDED AND SUPPLEMENTAL COMPLAINT

The plaintiff, Mary Eng, by her attorneys, Richard J. Katz, LLP, upon information and belief, at all times hereinafter mentioned, alleges:

### AS AND FOR A FIRST CAUSE OF ACTION

1.     Plaintiff is a resident of Queens County, New York.

2.     Plaintiff is an employee of the defendant New York City Police Department and has been since December 8, 1980.

3.     Plaintiff is a female over fifty-eight years of age.

4.     The defendant City of New York is a municipal corporation with its principal place of business in New York County.

5.     The defendant is the employer of the plaintiff.

6.     This Court's jurisdiction arises under 28 USC 1331, federal question jurisdiction, and the Equal Pay Act, 29 USC 206 and following and 42 U.S. Code 2000(a) and following.

7.     The pending action includes claims for damages for unequal payment of wages based on gender and/or age in violation of the Equal Pay Act and/or New York State Human Rights Law; Labor Law 194 and/or New York City Human Rights Law.

8. The federal Equal Pay Act provides strict liability without proof of discriminatory intent.

9. Unequal wages based on gender violates the federal Equal Pay Act.

10. The cause of action for unequal wages based on age alleges violation of the New York State Human Right Law; Labor Law; and, New York City Human Rights Law.

11. Plaintiff has been a dutiful and diligent employee of the New York City Police Department for over 35 years.

12. Plaintiff has been in her current position since March 2007 as a Managerial Criminalist II, hereafter MC II, at the NYPD Jamaica lab.

13. At the present time and at any given since 2007, there have been either three or four Managerial Criminalist II employees assigned to the Jamaica NYPD laboratory performing the same or similar job duties.

14. The duties of an NYPD criminalist are attached hereto as Exhibit 1, reproduced from NYPD website. The plaintiff's job duties are attached hereto as Exhibit 2. The job duties of the comparator employees are described in Exhibit 1 and/or Exhibit 2. As this time, plaintiff is deferring attaching the 114 page NYPD Police Laboratory Manual as the defendant/employer already has its own document, any claimed missing specificity can be remedied by reading its own manual.

15. The plaintiff is the second-longest tenured Managerial Criminalist II of all currently employed Managerial Criminalist II employees of the defendants.

16. The plaintiff is the only MC II Manager available 24/7 via Blackberry, called upon at all hours for high priority cases. The male MC IIs are rarely called upon to respond during non-working hours. The female MC II, due in part to lack of experience, is rarely called

upon during non-working hours.

17.     In addition to 24/7 availability greater than the other three MC IIs at the Jamaica lab, the plaintiff is the Designated Safety Officer. Before the plaintiff assumed the role of the Safety Officer position, the Safety Officer position was the exclusive job of the prior Safety Officer.

18.     Despite seniority in tenure; more 24/7 response time duties; and, absorbing the job duties of the formerly separate position of Fire Safety Officer, plaintiff Mary Eng is paid less than John Doe 1, John Doe 2 or Jane Doe 1, all of whom work in the NYPD Jamaica lab with the same job title of MC II.

19.     On information and belief, T. H., John Doe 1, a younger male Criminalist IV, approximately 57 years of age, performs substantially similar job duties or lesser job duties than the plaintiff, yet John Doe 1 is paid approximately $11,000.00 per year more than plaintiff.

20.     On information and belief, M.J., John Doe 2, a younger male Managerial Criminalist II, approximately 54 years of age, performs the substantially similar job duties or lesser job duties than the plaintiff, yet John Doe 2 is paid approximately $9,000.00 per year more than the plaintiff.

21.     Upon information and belief, D. V., Jane Doe 1, is an approximately 41-year-old female employed as a Managerial Criminalist II who also earns approximately $9,000.00 a year more than the plaintiff for similar or lesser work. Ms. Doe was promoted to this position in 2014 and immediately received a higher salary at the level that the male employees receive and that the plaintiff does not receive.

22.     The conduct of the employer in paying a female employee with the longest tenure less wages than two males performing the same or similar work violates the Equal Pay Act; the

New York State Human Rights Law; New York State Labor Law 194; and New York City Human Rights Law.

23. The conduct of the employer in paying the female employee with the longest tenure less wages than a recently hired younger female Managerial Criminalist II for the same or similar job duties violates the New York State Human Rights Law; Labor Law 194; and, New York City Human Rights Law.

24. Plaintiff attempted to avoid this lawsuit by a writing to the employer and by voluntary participation in an employer sponsored "EEO" session. The session was unsuccessful.

25. The conduct of the employer is willful and/or reckless in that the "EEO response" was a meaningless wordy response. The essentially identical prolix verbiage used by the same employer as a purported explanation of its improper pay practices had previously been rejected as an Equal Pay Act defense by a court sitting in the Southern District of New York. The Second Circuit has held that the fact that a salary schedule with male/female differential was part of a collective bargaining agreement was not a defense to an Equal Pay Act claim.

26. The employer's conduct is willful and/or reckless within the meaning of the Equal Protection Act entitling the plaintiff to three years back pay rather than two years back pay from her initial complaint and participation in employer sponsored EEO proceedings.

27. The plaintiff seeks back pay for a period of three years from the time of her initial complaint plus interest; front pay; an order directing that her pay be equal to other Managerial Criminalist II employees; and for attorneys' fees and costs of bringing this claim and lawsuit.

## AS AND FOR A SECOND CAUSE OF ACTION

28. The plaintiff hereby incorporates by reference Paragraphs 1 through 27.

29. The described conduct of the employer violates the New York State Human

Rights Law, Executive Law §§ 296 and following and Labor Law 194 by discriminating based on gender by paying a female Managerial Criminalist II with more seniority less than male Managerial Criminalist IIs at the same lab.

30.     The employer's violations, past and ongoing, of the Executive Law and Labor Law 194 have caused distress and economic harm, both past and future to the plaintiff.

31.     For the New York State law employer violations, the plaintiff has not submitted to any administrative forum and has elected a judicial remedy.

32.     According to proof, plaintiff seeks back pay plus interest; front pay; an order of this Court equalizing her pay with other Managerial Criminalist II employees of the defendant; distress damages; attorneys' fees, and such other and further relief as the Court may deem just and proper in the premises.

## AS AND FOR A THIRD CAUSE OF ACTION

33.     Plaintiff hereby incorporates Paragraphs 1 through 32 of the complaint.

34.     The described conduct of the employer violates the New York State Human Rights Law, Executive Law §§ 296 and following, and Labor Law 194 by discriminating based on age by paying the plaintiff with 20 plus years' seniority a lesser wage than a recently hired, younger female Managerial Criminalist II, the latter performing similar or lesser job duties.

35.     The employer's violations, past and ongoing, of the Executive Law and Labor Law 194 have caused distress and economic harm, both past and future to the plaintiff.

36.     For the New York State law employer violations, the plaintiff has not submitted to any administrative forum and has elected a judicial remedy.

37.     According to proof, plaintiff seeks back pay with interest; front pay; an order of this Court equalizing her pay with other Managerial Criminalist II employees of the defendant;

distress damages; attorneys' fees, and such other and further relief as the Court may deem just and proper in the premises.

## AS AND FOR A FOURTH CAUSE OF ACTION

38.     Plaintiff incorporates Paragraphs 1 through 37.

39.     The employer violated the New York City Human Rights Law by discriminating based on gender by paying a female Managerial Criminalist II with more seniority less wages than the male Managerial Criminalist IIs at the same lab for similar or lesser duties.

40.     The employer's violations of the New York City Human Rights Law have caused distress and continue to cause distress; the violations have caused economic harm, past and future, including the need for attorneys' fees to rectify the situation.

41.     As to the New York City law remedy, plaintiff has made her election to pursue judicial remedies in lieu of any administrative proceeding.

42.     Plaintiff seeks back pay plus interest; front pay until salary equalized; distress damages, past and future, and attorneys' fees and such other and further relief as the Court may deem just and proper in the premises.

## AS AND FOR A FIFTH CAUSE OF ACTION

43.     The plaintiff hereby incorporates Paragraphs 1 through 42.

44.     The employer violated the New York City Human Rights Law by discriminating based on age by paying the plaintiff, a female Managerial Criminalist II with years of seniority less wages than a recently hired (2014) younger female Managerial Criminalist II approximately 22-25 years younger than the plaintiff.

45.     The employer's violations of the New York City Human Rights Law have caused distress, past and ongoing; as well as economic harm, past and ongoing, including attorneys'

fees.

46. The plaintiff seeks damages to equalize past back pay plus interest; an order equalizing current and future pay; an amount subject to proof for distress damages, past and future; and for attorneys' fees for having to rectify this situation and pursue this lawsuit.

**WHEREFORE**, the plaintiff seeks judgment against the defendant for back pay according to proof plus interest; for front pay until such time as the pay discrepancy is rectified; distress damages past and ongoing according to proof; plus attorneys' fees and costs pursuant to federal statute and/or state statute and/or New York City Administrative Code.

Dated: New York, New York
      March 21, 2016

                                          RICHARD J KATZ LLP

                                      By: _____
                                          RICHARD J. KATZ
                                          *Attorneys for the Plaintiff*
                                          80 Broad Street, 33rd Floor
                                          New York, New York 10004
                                          (212) 233-1515

# EXHIBIT 1

# NYPD - Careers

## Criminalist

The New York City Police Department is seeking applicants for the position of Criminalist in our Police Laboratory in Jamaica, Queens. Criminalists perform work in the chemical and/or physical analyses of evidentiary materials such as hair, fibers, body fluids, fingerprints, gunshot residue, fire accelerants, questioned documents, controlled substances, soil, metals, polymers, glass, and other types of forensic trace evidence required in scientific criminal investigations.

Qualification Requirements for All Levels:
A Bachelor's degree from an accredited college with specialization in criminalistics, forensic science, chemistry, biology, physics, genetics and molecular genetics, biochemistry, molecular biology, entomology, anthropology, ecology or a closely related scientific or engineering field.

For Appointment at Level 1A
Individuals must possess a Bachelor's degree in one of the above mentioned fields.

For Appointment at Level 1B
In addition to the Bachelor's degree, candidates must have 1 year of full time experience in criminalistics, forensic science or analytical chemistry, or a closely related scientific or engineering field. An approved internship in criminalistics or forensic science may be substituted for 1 year of experience. Individuals hired at level 1A can be upgraded to 1B after completing a year of satisfactory experience.

For Advancement to Levels II through IV
Each level requires an additional year of qualifying full time experience as listed above. A Master's degree in one of the qualifying areas may be substituted for up to 2 years of experience.

Salary
1A $45,728   Flat rate
1B $48,581 - $57,630
II $58,136 - $79,993
III $72,475 - $95,471
IV $83,625 - $109,234

Salary commensurate with experience and salary history.

To apply, please forward your cover letter and resume to: empsec@nypd.org.

Indicate **Criminalist** on the subject line of your email.

# EXHIBIT 2

**SCIENTIFIC SECTION MANAGER (CRIMINALISTICS)**
The Scientific Section Manager will:
☐ Be responsible for the section meeting the Laboratory's Mission Statement
• Be responsible for his/her section's needs and concerns regarding budget issues
• Be responsible for the procedures and protocols in all laboratories within their section
• Ensure standard training protocols for new criminalists /examiners, and retraining of existing employees, as needed within their section
• Ensure that procedures and training manuals for their section accurately reflect established standards and comply with ASCLD/LAB-*International* accreditation requirements
• Assure quality control measures within his/her section
• Enhance continuous improvement in their section through promoting member participation in training opportunities, professional organizations, research and publication and by recognition of achievements
• Develop and update effective plans to address program direction, staffing, training, equipment, and quality assurance needs within their section
• Be responsible for annual evaluation of Section Supervisors
• Provide overall technical leadership and guidance to his/her section
• Resolve technical issues and if necessary bring it to the attention to the Director or Deputy Director and Quality Assurance Manager
• Ensure that nonconformances and corrective actions which are initiated in his/her section are resolved
• Ensure the following data is gathered:
a. Total number of Property Clerk Invoices received (monthly and year to date)
b. Total number of Property Clerk Invoices analyzed (monthly and year to date)
c. Total number of items analyzed (monthly and year to date) • Using caseload trends, recommend to the Director and Deputy Director a staffing model for their section
• Ensure all vacancies are being actively recruited for the best candidates
• Conduct and document staff meetings on regular basis

**SCIENTIFIC SECTION MANAGER (CONTROLLED SUBSTANCE ANALYSIS)**
The Scientific Section Manager will:
• Be responsible for the section meeting the Laboratory's Mission Statement
• Be responsible for their section's needs and concerns regarding budget issues
• Be responsible for the procedures and protocols in all laboratories within their section
• Be responsible in conjunction with Quality Assurance and PSU, for the calibration, maintenance and service contracts for the section concerning all balances, microscopes, heat sealing machines and other related equipment. Ensure that procedures and training manuals for their section accurately reflect established standards and comply with ASCLD/LAB-International accreditation requirements
☐ Assure quality control measures within their section
☐ Enhance continuous improvement in their section through promoting member participation in training opportunities, professional organizations, research and publication and by recognition of achievements
• Develop and update effective plans to address program direction, staffing, training, equipment, and quality assurance needs within their section
• Be responsible for annual evaluation of Section Supervisors
• Provide overall technical leadership and guidance to his/her section
• Resolve technical issues and if necessary bring it to the attention to the Director or Deputy Director

and Quality Assurance Manger
• Coordinate with Quality Assurance Manger to ensure that corrective action(s) which are initiated in his/her section are resolved
• Ensure the following data is gathered and forwarded through the proper channels each month:
a. Total number of cases received (monthly, year to date and compared to last year)
b. Total number of items received (monthly, year to date and compared to last year)
c. Total number of cases analyzed (monthly, year to date and compared to last year)
d. Total number of items analyzed (monthly, year to date and compared to last year)
• Using caseload trends, recommend to the Director and Deputy Director a staffing model for their section
• Ensure all vacancies are being actively recruited for the best candidates
• Conduct and document staff meetings on regular basis

**SCIENTIFIC SECTION MANAGER (CONTROLLED SUBSTANCE ANALYSIS PROGRAM)**
The Scientific Section Manager will:
• Be responsible for the section meeting the Laboratory's Mission Statement
• Be responsible for their section's needs and concerns regarding budget issues
• Be responsible for the procedures and protocols in all laboratories within their section
• Be responsible for the preventative maintenance, ongoing maintenance, service contracts and capital purchases for the various sections concerning all analytical instrumentation and equipment, coordinating the various needs with the respective Section Managers/Commanding Officers
• Assure quality control measures within their section
• Provide overall technical leadership and guidance to his/her section
• Enhance continuous improvement in their section through promoting member participation in training opportunities, professional organizations, research and publication and by recognition of achievements
• Ensure that procedures and training manuals for their section accurately reflect established standards and comply with ASCLD/LAB-International accreditation requirements
• Be responsible for annual evaluation of Program Section Supervisors
• Resolve technical issues and if necessary bring it to the attention to the Director or Deputy Director and Quality Assurance Manager
• Coordinate with Quality Assurance Manger to ensure that corrective action(s) which are initiated in his/her section are resolved • Conduct and document staff meetings on a regular basis

**COMMANDING OFFICER - FIREARMS ANALYSIS SECTION**
The Commanding Officer will:
• Be responsible for the section meeting the Laboratory's Mission Statement
• Be responsible for his/her section's needs and concerns regarding budget issues
☐ Be responsible for the procedures and protocols in all laboratories within his or her section
• Ensure standard training protocols for new criminalists/examiners, and retraining of existing employees, as needed within his or her section
• Ensure that procedures and training manuals for his or her section accurately reflect established standards and comply with ASCLD/LAB-*International* accreditation requirements
• Assure quality control measures within his or her section
• Enhance continuous improvement in his or her section through promoting member participation in training opportunities, professional organizations, research and publication and by recognition of achievements

• Develop and update effective plans to address program direction, staffing, training, equipment, and quality assurance needs within their section
• Be responsible for annual evaluation of Section Supervisors
• Oversee the resolution of technical issues and if necessary bring it to the attention to the Director or Deputy Director and Quality Assurance Manager
• Ensure that corrective action(s) which are initiated in his/her section are resolved
• Ensure the following data is gathered and forwarded through the proper channels each month:
a. Total number of cases received (monthly, year to date and compared to last year)
b. Total number of items received (monthly, year to date and compared to last year)
c. Total number of cases analyzed (monthly, year to date and compared to last year)
d. Total number of items analyzed (monthly, year to date and compared to last year)
• Using caseload trends, recommend to the Director and Deputy Director a staffing model for his or her section
• Ensure all vacancies are being actively recruited for the best candidates
• Conduct and document staff meetings on a regular basis